## Schenker, Appellant, *v.* Indemnity Insurance Company of North America et al.

Argued October 3, 1940. Before SCHAFFER, C. J., DREW, LINN and PATTERSON, JJ.

*S. Y. Rossiter,* for appellant.

*Byron A. Baur,* of *Marsh, Spaeder, Baur & Marsh,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, October 28, 1940:

This is an action of assumpsit instituted by Martin Schenker, appellant, against the Indemnity Insurance Company of North America, appellee, on an alleged oral agreement to become a surety. From judgment n. o. v. entered in favor of the Indemnity Company, Schenker appeals.

Having received notification, on November 17, 1936, that a proposal submitted by him to the county commissioners of Erie County, Pennsylvania, for the construction of the Erie County Tuberculosis Hospital, had been accepted, appellant, on the following day, November 18, 1936, made written application to the appellee Indemnity Company, through its agent at Erie, one George K. Frank, for a performance bond, in the amount of $100,698, required to be filed by him as the successful bidder. After investigation of the financial statements of appellant and his proposed indemnitor, the company, on November 20, 1936, promptly declined to accept the risk unless appellant could raise $20,000, to be deposited in a special account for the payment of bills as the construction work progressed. By reason of appellant's inability to raise this sum, an admittedly reasonable requirement under the circumstances, and his inability to meet the similar minimum financial requirements of other companies applied to, by November 30, 1936, the last day for filing the required bond, the Tuberculosis Hospital contract was awarded to the second lowest bidder.

On February 5, 1937, appellant instituted this action of assumpsit, setting forth an oral agreement allegedly entered into on or about October 16, 1936, with the aforementioned George K. Frank, acting for and on behalf of the appellee company, whereby it was agreed that

appellee would become surety on whatever performance bond might be required to be furnished by appellant, in the event that he submitted a bid and the contract was awarded to him. Damages in the sum of $11,820.40, including expenses incurred in preparing and submitting the bid, attorney's fees expended in recovering a certified check accompanying same and lost profits, were claimed. The principal defense was lack of authority on the part of Frank to bind appellee to a contract such as was allegedly entered into by him on its behalf, and the controlling question, as the case has been presented to us, relates to whether limitations contained in the written authority of Frank are binding upon the appellant. The learned court below was of opinion, and appellee contends, that appellant was legally chargeable with notice of such limitations whereas appellant contends that, having dealt with Frank as general agent of the appellee company, he is not affected by the limitations of authority.

Frank's authority, as contained in a recorded power of attorney, a copy of which was attached to appellant's statement of claim, insofar as it is here relevant, authorized him merely "to make, execute, seal and deliver . . . bonds and undertakings on penalties not exceeding One Hundred Thousand ($100,000.00) Dollars each in its business of guaranteeing . . . the performance of contracts other than insurance policies, and executing and guaranteeing bonds or other undertakings . . . by law required or permitted." His authority is further limited by written "Limitations and instructions for execution or attestation of bonds executed under Special Power of attorney issued to Mr. George K. Frank, Erie, Pa.", improperly excluded by the court below, requiring that all "Bonds Guaranteeing Performance of Contracts, Bids and Proposal Bonds" for construction contracts, "one of the most hazardous classes of bonds written," be submitted to the home office. Frank's authority, being thus limited to the execution of bonds not exceeding $100,000, and then only after obtaining the approval of

the home office in the case of bonds of the type with which we are here concerned, it cannot be maintained that the alleged oral agreement declared upon was expressly authorized, and appellant does not seriously so contend. As stated in *Culbertson v. Cook*, 308 Pa. 557, 562, "it is a well known rule that letters of attorney are to be construed strictly, and when special powers are given they are not to be enlarged unless clearly so intended." See also *Mott v. Kaldes*, 288 Pa. 264, 270; *Union Trust Co. v. Means*, 201 Pa. 374, 377; *Campbell v. Foster Home Assn.*, 163 Pa. 609, 632; *Gross v. Kincaid*, 83 Pa. Superior Ct. 514, 517.

It may well be that appellant had no actual knowledge of the limitations upon Frank's authority to bind the appellee company, but the facts and circumstances were such as to impose upon him the duty of tracing Frank's authority to its source, and having failed to do so, he is nevertheless chargeable with knowledge of all the facts such inquiry would have revealed to him. It is admitted that at the time of the alleged oral contract the amount of appellant's bid, and consequently the amount of the bond which would be required if the contract were awarded to him, had not been determined, and, in fact, that at this time he had not as yet commenced calculating or figuring with respect thereto. It is also admitted that at the time of the alleged agreement no investigation whatever had been made as to the financial standing of either appellant or his proposed indemnitor. In view of these admitted facts, the situation is analogous in its legal aspects to that dealt with in *Paper M. S. Co. v. Container Corporation*, 301 Pa. 62, where this Court, referring to the contract there declared upon, said: "This is certainly a somewhat remarkable and out-of-the-ordinary business arrangement and before defendant could be held obligated to such an undertaking, it would have to appear very clearly that the manager of its mill had authority to enter into such a contract. . . . It may be stated as a cardinal prin-

ciple of business dealings that the making of no such contract as this could be assumed to be within the powers of the manager of a mill, and before acting upon assumed power by such an official, it was the duty of the other party to the contemplated contract to trace his authority to its source to ascertain whether he possessed such power." See also *Culbertson v. Cook,* supra. The reasoning of these cases is particularly applicable here as it appears that from prior dealings with appellee, through this same agent, appellant was aware not only that bonds were issued only after formal application to, and approval by, appellee's home office but also that satisfactory financial statements were required to be furnished. If there were any question as to the right of appellant to assume that Frank had unlimited authority to bind appellee, that he did not so assume appears most clearly from his own action in voluntarily submitting the usual written application after the construction contract had been awarded to him; having thus admitted, by his own conduct, that he did not regard the negotiations with Frank as creating an obligation binding upon appellee, he is not now in a position to contend otherwise.

While it is true that a principal may not hold his agent out in the character of one having general authority and bind third persons who have relied thereon in good faith by secret limitations and restrictions upon the agent's authority which are inconsistent with the character bestowed, it is equally well settled that a principal may confer on his agent as much or as little authority as he sees fit, imposing thereon such limitations as he thinks desirable, and that such limitations, *even in the case of a so-called general agent,* will be as binding and conclusive upon third persons who know of them or who, like this appellant, are charged with knowledge of them from surrounding facts and circumstances as they are upon the agent: *Edwards v. Heralds of Liberty,* 263 Pa. 548.

Other questions are raised and suggested, but, since what has already been said necessarily disposes of the case, we do not discuss them.

Judgment affirmed.