## Stinson, Appellant, *v.* Smith et al.

Argued December 8, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*George T. Steeley,* for appellant.

*John J. Gallagher* and *Vincent A. Carroll,* for appellees, were not heard.

OPINION BY MR. JUSTICE MAXEY, January 31, 1938:

This is an action for malicious prosecution. On February 20, 1932, L. A. Gray, agent for Emma J. Hendricks, entered into a monthly lease with the plaintiff and his wife for a house and lot in Trewigtown, Montgomery County. The lease was from March 3, 1932, and the rental was $35 a month.

L. A. Gray acquired the property referred to, by a deed dated March 11, 1932, and executed by the sheriff of Montgomery County. Gray conveyed the premises to Willard T. Smith by deed dated February 28, 1933. He also assigned the lease to Smith. On August 28, 1933, Henry D. Sell, a constable, made, in behalf of Gray, a distress for rent, in the sum of $415 and costs of $7, on the goods of Ray W. Stinson and his wife, the tenants of this property. The goods levied upon consisted of "four wicker chairs, one flower basket, five small rugs, four porch rockers, one Chevrolet truck, lot of chairs, one kitchen table and lot of chickens." In plaintiff's statement he avers that "he was not guilty of the charge of removing goods under levy (larceny by bailee)," on which the criminal prosecution was founded, and that "the defendants knew, or should have known, that the plaintiff was not guilty of said charge."

On August 31, 1933, the defendant, Constable Sell, caused a warrant to be issued for the arrest of the plaintiff on a charge of "larceny by bailee," the subject of this larceny by bailee being some of the personal property levied upon under the landlord's warrant and alleged to have been removed by Stinson.

It is pleaded that Sell in swearing to the information for a warrant of arrest was acting with the consent and approval of the defendant, Willard T. Smith. Plaintiff was arrested and lodged in a cell in a Philadelphia police station at 10 p. m., September 6, 1933, and at about

10 a. m. on the following day, he was taken to the office of Willard T. Smith, the defendant, and from there he was taken at 1 p. m., September 7th, before a magistrate in Philadelphia where bail was fixed in the sum of $600, for plaintiff's appearance before the appropriate court in Montgomery County. Plaintiff secured his release at about 1 p. m. by entering bail. The prosecution of the plaintiff ended when a nolle prosequi was duly entered on November 3, 1933.

Plaintiff averred that his arrest and detention were unlawful and without just and reasonable or probable cause and that the acts and conduct of the defendants in procuring his arrest were wilful and malicious. He brought this action and asked damages in the sum of $10,000.

At the trial plaintiff testified that the amount of rent he owed was only $315, or $100 less than the amount distrained for, and that on August 31st and September 1st, 1933, he "moved some furniture" from his home "to 4810 North 10th Street, Philadelphia." He was asked: "Did you move it all?" and he replied, "No, sir." "Q. Did you move any of the furniture stated in this levy? A. No, sir." He said that a few days later Mr. Smith and Mr. Sell (the defendants) came to his home and that Mr. Smith introduced Mr. Sell as the constable and said, "I have had him swear out this warrant for you, but I am going to give you a break. If you give me your truck, your living room set, your frigidaire and your radio in payment of the rent you owe me, I will call it square." A little later while plaintiff was on his way back from a drug store, a truck drove up and Smith said to plaintiff: "Once more I am going to ask you if you are going to give me that stuff" (apparently meaning the goods above enumerated). Plaintiff answered "No" and Smith said: "I am going to lock you up." "With that he grabbed me by the arm [so plaintiff testified] and took me back to the house and called Mr. Sell and Mr. Plant. He took me across the street by the arm and

Sell followed. . . . Sell had a gun drawn." Plaintiff then described how he was put in the back seat of a car and driven to the office of Magistrate O'Hara in northeast Philadelphia. They then took him to City Hall. He said that Smith got out of the car, was gone about a half or three-quarters of an hour, and when he returned he said to Sell: "I don't know what is the matter with these Magistrates. They won't handle this case." It was then decided to take plaintiff to Lansdale but later they changed their minds and took him to the Branchtown Police Station. Plaintiff was searched and put in a cell where he remained until the next morning at 9 o'clock. He was in the cell about eleven hours. He was then brought before Magistrate Blecher who refused to hear the case. From there he was taken to the Germantown Police Station and then to Smith's office where they arrived at about 11 o'clock. He was kept there until quarter of one when he was taken to Magistrate Coward's office. He there waived a hearing and was released under $600 bail. The next plaintiff learned about the case was that it had been nol-prossed.

Plaintiff's wife also testified that they did not move to Philadelphia "any of the goods that were levied upon." On cross-examination, however, she admitted that "the Chevrolet truck" was used to move the goods to Philadelphia and then "returned to Lansdale to the garage." She also testified as to Smith demanding from her husband their frigidaire, living room set, and radio, which had not been distrained, and his threat that if this demand was not complied with he would swear out a warrant for her husband's arrest, and her husband's refusal to comply with this demand. Smith then went out but later came back and told her husband that they [Smith and Sell] were going to lock him up. They took plaintiff by the arm and went out to the automobile. Plaintiff also proved the termination of the criminal prosecution by the entry of a nol pros.

At the close of plaintiff's case, a motion for a non-suit was granted, the trial judge saying that "there is no evidence in this case that the prosecution was maliciously begun and proceeded with, and therefore a compulsory nonsuit will be entered." The court refused to take off this nonsuit. An exception was taken and this appeal followed.

In *Rhoads et ux. v. Herbert,* 298 Pa. 522, 148 A. 693, this court said that "a nonsuit can be entered only in a clear case; if there is any doubt as to the inferences to be drawn from the evidence, it is for the jury: *Frank v. Cohen,* 288 Pa. 221, 225 [135 A. 624]." See also *Jester v. P. B. & W. R. R. Co.,* 267 Pa. 10, 109 A. 774. A motion for a compulsory nonsuit under the circumstances present here is in practical effect a demurrer to the evidence and, as Chief Justice TILGHMAN said in *Dickey v. Schreider,* 3 S. & R. 413, 415: "He that demurs to parol evidence, engages in an uphill business. For every fact is taken pro confesso, which the jury might, with the least degree of propriety, have inferred from his evidence."

"For the purposes of a motion for compulsory nonsuit because the plaintiff has failed to make out a sufficient case for the jury, all plaintiff's evidence is regarded in the light most favorable to him, and all fair intendment and every inference that a jury might draw therefrom in his favor is given to him. And where there is evidence in the record fairly tending to support all of the material allegations of the plaintiff's complaint, the determination of the case should be left to the jury, even though the evidence be unsatisfactory and conflicting in some particulars" (citing cases): 7 Standard Encyclopedia of Procedure, pages 673-74.

In *Altman v. Standard Refrigerator Company, Inc.,* 315 Pa. 465, 173 A. 411, we held that to make out a case of malicious prosecution the burden is upon the plaintiff to prove affirmatively, by circumstances or otherwise, that the defendant had no reasonable or probable

cause for instituting the original criminal proceedings, and that the prosecution was malicious. This must be proved in addition to the termination of the criminal proceedings in favor of the defendant in those proceedings. We held that *the mere fact of an acquittal or termination otherwise of criminal proceedings* in favor of an accused did not make out a prima facie case of malicious prosecution against the person who instituted these proceedings. However, the proof of want of probable cause and of malice may be founded on circumstantial evidence; in fact, such proof in these cases usually depends on inferences. In *Payne v. East Liberty Spear Co.*, 323 Pa. 100, 185 A. 853, we held in an action for malicious prosecution that "the jury could infer from the testimony that the object of the criminal prosecution was to collect the debt or obtain the return of the property" and that "a prosecution so motivated constitutes prima facie evidence of malice and want of probable cause: *Farneth v. Commercial Credit Co.*, 313 Pa. 433 [169 A. 89]; *Randall v. Fenton Storage Co.*, 117 Pa. Super. Ct. 212, 216 [177 A. 575]."

It appears from the uncontradicted testimony in this case that the household goods and other personal property which the plaintiff Stinson took from his home in Montgomery County to Philadelphia were not the same goods the constable distrained for rent except, according to Mrs. Stinson's testimony, as to "the Chevrolet truck," which she said was used merely to move the goods and then "returned to Lansdale to the garage." On this state of the record, the jury might appropriately have found that there was no probable cause for the defendants' arrest of Stinson on a charge of larceny by bailee. If, as appears from the uncontradicted testimony, the arrest of Stinson was brought about by these defendants for the purpose of making him deliver to Smith, for rent allegedly due to the latter, "the living room set, the frigidaire and the radio," all of which were not even distrained for rent, and if, as was testi-

fied, "Sell had a gun drawn" when he and Smith took and held the plaintiff in custody, a jury would be justified in drawing the inference that these defendants were actuated by malice. This legal proof of want of probable cause and of malice, plus the proof of the later nol pros of the criminal proceedings, made out a prima facie case for the plaintiff and the compulsory nonsuit was improper.

The judgment is reversed with a procedendo.