Revere Press, Inc. *v.* Blumberg et al.,
Appellants.

372

Argued April 25, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Herald Price Fahringer*, of the New York Bar, with him *Charles L. Ford*, for appellants.

*Frank E. Hahn, Jr.*, with him *Herbert A. Fogel*, *Robert M. Crooks*, and *Obermayer, Rebmann, Maxwell & Hippel*, for appellee.

OPINION BY MR. JUSTICE EAGEN, October 3, 1968:

Revere Press, the plaintiff in this assumpsit action, seeks to recover $7,520 for the printing of dental hygiene literature which was distributed during August of 1964 at the Democratic National Convention held in Atlantic City, New Jersey. The defendants are H.R.B., Inc., a nonprofit Pennsylvania corporation organized to raise funds to provide free dental care for the handicapped, and Mrs. Helen R. Blumberg, the president of H.R.B., Inc. After a trial without a jury,

the trial judge entered a verdict for $5,500 in favor of the plaintiff and against both defendants. Defendants' exceptions were dismissed and a judgment was entered on the verdict. On appeal, the judgment was affirmed by the Superior Court without opinion. An appeal to this Court was then allowed.

The major issue on this appeal is whether or not the judgment against Helen Blumberg is supportable. Our review of the record persuades us that the judgment against Mrs. Blumberg cannot stand.

The parties and the trial court have focused their attention on the question of whether Mrs. Blumberg, by her conduct in arranging for the printing, did or did not incur personal liability under the well established agency law that an authorized agent for a disclosed principal is not liable on a contract between the principal and a third party unless the agent agrees with the third party to be liable,[1] while an agent who enters into a contract without authority or without disclosing either that she is acting for a principal or the identity of the principal is personally liable.[2]

Mrs. Blumberg cannot be held personally liable on any theory which depends upon a finding that she had no authority to contract for this printing on behalf of H.R.B., Inc. In fact, plaintiff never has questioned Mrs. Blumberg's authority to act in this matter for H.R.B., Inc. Plaintiff's efforts to establish H.R.B., Inc.'s liability impliedly accepts Mrs. Blumberg's authority to bind the corporation, for on no other theory could the corporation be held liable. Even if plaintiff did question Mrs. Blumberg's authority, the trial

---

[1] E.g., *Geyer v. Huntingdon Co. Agr'l Assn.*, 362 Pa. 74, 66 A. 2d 249 (1949); *Yentis v. Mills*, 299 Pa. 25, 148 A. 909 (1930); Restatement 2d, Agency, §320 (1958).

[2] E.g., *Penna. Co. v. Clark*, 340 Pa. 433, 447-48, 18 A. 2d 807 (1941); *Aber v. Pa. Co. for Ins. on Lives*, 269 Pa. 384. 112 A. 444 (1921); Restatement 2d, Agency, §§321, 322 (1958).

court's finding that the corporation is liable confirms that Mrs. Blumberg had authority and that finding is amply supported by the evidence.

Mrs. Blumberg cannot be held personally liable because she dealt with plaintiff as an agent without disclosing that she was acting as an agent or without identifying H.R.B., Inc. as her principal. The printing for which plaintiff seeks to recover was ordered from plaintiff by Mr. Herbert Pasker, who had been contacted by Mrs. Blumberg at the suggestion of a printer who previously had handled work for H.R.B., Inc., but who could not prepare the convention literature in the short time available. Plaintiff's officials testified that after the second of thirteen job orders that make up plaintiff's claim, they asked Mr. Pasker whom to bill and, after asking Mrs. Blumberg, he told them to bill H.R.B., Inc. Mr. Pasker's testimony and plaintiff's records corroborate this. Thus it certainly was disclosed to plaintiff that H.R.B., Inc. was the principal for whom Mr. Pasker ordered the last eleven of the thirteen jobs.[3] With respect to the first two job orders, Mrs. Blumberg also cannot be held personally liable. It appears to us that the major reason for holding personally liable an agent who does not disclose either the principal's identity or existence is that, under such circumstances, the party dealing with the

---

[3] The sound rule is that a principal's status as disclosed, undisclosed or partially disclosed is determined at the time of contracting. Restatement 2d, Agency, §4, comment c (1958). Thus, it would be incorrect to conclude that the disclosure to plaintiff after two job orders was sufficient to make H.R.B., Inc. a disclosed principal throughout the entire printing, including the first two orders. In our judgment it also would be incorrect to link the thirteen orders, treat them as a single contract, and hold H.R.B., Inc. undisclosed on the basis of its status during the first order. As plaintiff's own officials testified, the thirteen orders were separate transactions. Basically, they are separate contracts.

agent must rely on the agent personally. In this case, it is clear that if plaintiff was relying on any agent, it was Mr. Pasker. Mrs. Blumberg did not deal with plaintiff at all. Thus, if any agent was acting for an undisclosed or partially disclosed principal, it was Mr. Pasker, not Mrs. Blumberg.

Mrs. Blumberg cannot be held personally liable on the theory, adopted by the trial court, that she voluntarily agreed with plaintiff to be personally liable. Although officers of plaintiff testified that they were looking to Mrs. Blumberg for payment, this is less than a complete agreement. Mrs. Blumberg also in some way must have offered to be personally liable or must have accepted personal liability. There is no evidence that she did so.

During the transactions giving rise to the debt, Mrs. Blumberg and plaintiff communicated only through Herbert Pasker. Since Mrs. Blumberg did not deal at all with plaintiff, she could not herself have indicated to plaintiff that she agreed to be personally liable. Assuming that Mr. Pasker represented to plaintiff that Mrs. Blumberg would be personally liable, he did not have authority to make such a representation.

There is no evidence to support a finding that Mr. Pasker had apparent authority to bind Mrs. Blumberg. Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted. Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if, for instance, the principal knowingly permits the agent to exercise such power or if the principal holds the agent out as possessing such power. *Jennings v. Pitts. Mercantile Co.*, 414 Pa. 641, 202 A. 2d 51 (1964); Restatement 2d, Agency, §§8, 27 (1958). On the first two printing orders, it

appears that Mrs. Blumberg was not even a disclosed principal. Thus, Mr. Pasker could not have had any apparent authority on those transactions. *Jennings v. Pittsburgh Mercantile Co.*, supra, 414 Pa. at pp. 644-45, 202 A. 2d at p. 54. On the last eleven printing orders, it does not appear that Mrs. Blumberg in any way manifested to plaintiff or to anyone else that Mr. Pasker could bind her personally. There is no evidence that she knew that Mr. Pasker was purporting to bind her to pay for the printing which she directed him to have billed to the corporation. Nor is there any evidence of other conduct on the part of Mrs. Blumberg from which the plaintiff could reasonably believe that she consented to Mr. Pasker, a special agent, exercising the unusual authority to bind her personally on this corporate contract. Thus, on this record, a finding that Mr. Pasker had apparent authority to bind Mrs. Blumberg personally is completely unsupportable.

There is no evidence to support a finding that Mr. Pasker had actual authority, express or implied, to bind Mrs. Blumberg. The record discloses nothing said or done by Mrs. Blumberg from which Mr. Pasker reasonably could have believed that she consented to his exercising the power to bind her personally. Moreover, it would not have been reasonable, especially after having been told to bill H.R.B., Inc., to think that he could bind Mrs. Blumberg as an agent personally without some definite indication to that effect. The record is devoid of such evidence.

It is argued that, even if the judgment against Mrs. Blumberg is not supportable on an agency theory, it is proper to "pierce the corporate veil." We do not agree.

In the past this Court has said that it is proper to disregard the corporate entity when "justice or public

policy demand it and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless." *Tucker v. Binenstock*, 310 Pa. 254, 263, 165 A. 247, 250 (1933). In this case the reasons advanced for the position that justice and public policy would be served by "piercing the corporate veil" are not persuasive.

The appellee attaches great significance to the testimony that the stock of H.R.B., Inc. was never issued. In determining whether the corporate entity should be disregarded, this factor may be considered, but it is seldom sufficient. Annot., 8 A.L.R. 3d 1122 (1966). Additional reasons are necessary if justice and public policy are to demand that the corporate veil be pierced. In this case, the additional reasons are not weighty. Although Mrs. Blumberg had a "personal interest" in the corporation's charitable activities, this is true of many, if not most, stockholders and functionaries of charitable corporations and yet the legislature has conferred limited liability. The Act of May 5, 1933, P. L. 289, §§509, 610, 15 P.S. §§7509, 7610. If this personal interest were considered, the corporate entity envisioned by the legislature would truly be "useless."

H.R.B., Inc. has not been used as a device to defraud plaintiff. There has been no trickery or deception. The plaintiff should have known from the nature of the material printed that it was for a charitable corporation. Any loss it may incur is as much attributable to its failure to inquire into the corporation's desires as to the corporation's lack of resources.

The second question raised by the appellants is whether or not Mr. Pasker was authorized to contract for printing at a cost of more than $3000.

The record contains sufficient evidence to support a finding that Mr. Pasker's authority was not limited

as appellants contend. Mr. Pasker testified that he did not remember a conversation in which, as Mrs. Blumberg recalls, he told her that the printing would cost no more than $3000. Assuming that such a conversation occurred, Mr. Pasker's estimate of what the printing would cost did not necessarily become a limitation on his authority. The question of whether he could have reasonably believed that his authority was not limited by any dollar figure is a factual question and we cannot say that the lower court erred in resolving it against appellants.

The Order of the Superior Court affirming the Judgment entered against Helen Blumberg is reversed. The Order affirming the Judgment entered against H.R.B., Inc. is affirmed.